**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT NEW YORK**

| | |
|---|---|
| **ANA O'NEAL**, on behalf of herself and on behalf of all other similarly situated individuals,<br><br>    Plaintiff,<br><br>      v.<br><br>**DANIEL H. COOK ASSOCIATES, INC.,** and **CORRECTION OFFICERS' BENEVOLENT ASSOCIATION OF ROCKLAND COUNTY, INC.**<br><br>    Defendants. | Case No. _____<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Ana O'Neal ("Plaintiff"), individually and on behalf of all other similarly situated individuals (the "Class" or "Class Members," as defined below), by and through her undersigned counsel, files this Class Action Complaint against Daniel H. Cook Associates, Inc. ("DHCA") and Correction Officers' Benevolent Association of Rockland County, Inc. ("Correction Officers") (together, "Defendants") and alleges the following based on personal knowledge of facts, upon information and belief, and based on the investigation of her counsel as to all other matters.

## I.      NATURE OF THE ACTION

1.      Plaintiff brings this class action lawsuit against Defendants for their failure to protect and safeguard Plaintiff's and the Class's highly sensitive personally identifiable information ("PII"). As a result of Defendants' negligence and insufficient data security practices, cybercriminals easily infiltrated DHCA's inadequately protected network and on or around October 17, 2025, and accessed the PII of Plaintiff and the Class (the "Data Breach" or "Breach"). Now, Plaintiff's and the Class's PII is in the hands of cybercriminals who will undoubtedly use their PII for nefarious purposes for the rest of their lives.

2.     DHCA is a third-party administrator of self-funded benefits, including medical, dental, and optical benefits, as well as recordkeeping for the same.[1] DHCA states that one of its primary client bases are "labor unions and their members."[2]

3.     Correction Officers Benevolent Association of Rockland County is a nonprofit organization dedicated to enhancing the working conditions and well-being of its members, who are correctional officers.[3] They offer support and assistance in the form of moral and material aid and provide legal representation and counsel in necessary proceedings.[4]

4.     Upon information and belief, Correction Offices hired DHCA as a third-party vendor which collects and maintains Correction Officers' members' PII.

5.     Upon information and belief, the information accessed and acquired in the Data Breach includes, at a minimum, names and Social Security numbers ("PII' or "Private Information").[5]

6.     Plaintiff and the Class are current and former beneficiaries of DHC's services.

7.     Plaintiff is a former member of Correction Officers who, upon information and belief, uses DHCA to administer its offered benefits and DHCA collected and stored Plaintiff's Private Information provided by Correction Officers.

8.     As part of its business practices, Defendants obtain, collect, use, and derive a benefit from the PII of Plaintiff and Class Members. As such, Defendants assumed the legal and

---

[1] https://dhcook.com/tpa-solutions/ (last visited Jan. 22, 2026).
[2] *Id.*
[3] *See* https://givefreely.com/charity-directory/nonprofit/ein-133792349/ (last visited Jan. 22, 2026).
[4] *Id.*
[5] https://www.classaction.org/media/daniel-h-cook-associates-data-breach-letter-2026.pdf (last visited Jan. 22, 2026).

equitable duties to those individuals to protect and safeguard that information from unauthorized access and intrusion.

9.      This class action seeks to redress Defendants' unlawful, willful and wanton failure to reasonably protect the sensitive PII of the Plaintiff and Class Members, in violation of Defendants' legal obligations. Defendants failed to properly safeguard and protect the PII in their possession, thereby allowing cybercriminals the opportunity to steal Plaintiff's and Class Members' valuable PII from DHCA's inadequately protected computer and network systems.

10.      On October 17, 2025, DHCA experienced a network disruption, investigated the matter, and discovered that files in its network system were accessed by an unknown third-party.[6] On or about January 12, 2026, DHCA was able to learn the identities of Call Members whose Private Information was affected.[7]

11.      On January 17, 2026, DHCA notified the Maine Attorney General's office about the Breach and provided a sample notice of data security incident which contains Attorney General's officers contact information for affected individuals in the states of Maryland, Oregon, California, New York, Rhode Island, Iowa, Kentucky, North Carolina, and Washington D.C.[8] DHCA's sample notice of data security letter is posted on the Maine Attorney General's website.[9] Thus, the Data Breach affected individuals in various states.

12.      Upon information and belief, due to Defendants' negligence, cybercriminals have accessed and obtained everything they need to commit identity theft and wreak havoc on the financial and personal lives of thousands of individuals.

_____

[6] *Id.*
[7] *Id.*
[8] *See* https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/877ffa05-de26-4cee-b8ba-bee1810fb744.html (last visited Jan. 22, 2026).
[9] *Id.*

13.     Plaintiff and Class Members have all suffered injury as a result of the Defendants' negligent conduct, including: (i) the potential for Plaintiff's and Class Members' exposed PII to be sold and distributed on the dark web, (ii) a lifetime risk of identity theft, sharing, and detrimental use of their sensitive information, (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII, (iv) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time, and (v) the continued and increased risk to their PII, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to take appropriate and adequate measures to protect the PII of those it provides third-party administration of benefits for.

14.     Further, Plaintiff and Class Members are at significant risk of identity theft and various other forms of personal, social, and financial harm.

15.     Now, and for the rest of their lives, Plaintiff and the Class Members will have to deal with the danger of identity thieves possessing and misusing their Private Information. Even those Class Members who have yet to experience identity theft have to spend time responding to the Breach and are at an immediate and heightened risk of all manners of identity theft as a direct and proximate result of the Data Breach. Plaintiff and Class Members have incurred and will continue to incur damages in the form of, among other things, identity theft, attempted identity theft, lost time and expenses mitigating harms, increased risk of harm, damaged credit, deprivation of the value of their Private Information, loss of privacy, and/or additional damages as described below.

16.     In sum, Plaintiff and the Class will face an imminent risk of fraud and identity theft for the rest of their lives because: (i) Defendants failed to protect Plaintiff's and the Class's Private

Information, allowing a large and preventable Data Breach to occur; (ii) Correction Officers failed to ensure that its vendor had adequate security safeguards to protect Plaintiff's PII, (iii) the cybercriminals who perpetrated the Breach accessed Private Information that they will sell on the dark web (if they have not already) because that is the *modus operandi* of cybercriminals who perpetrate breaches such as this; (iv) Defendants failed to timely discovery the Breach; and (v) Defendants failed to timely notify Plaintiff and the Class of the Breach.

17.     Plaintiff brings this action individually and on behalf of the Class, seeking compensatory damages, punitive damages, nominal damages, restitution, and injunctive and declaratory relief, reasonable attorney fees and costs, and all other remedies this Court deems proper.

## II.     THE PARTIES

18.     Plaintiff **Ana O'Neal** is an individual domiciled in Bronx, New York. Plaintiff is a former member of Correction Officers' Benevolent Association, who, upon information and belief, hired Daniel H. Cook Associates Inc. to administer its benefit plans and DHCA collected and maintained Plaintiff's Private Information in its systems.

19.     Defendant **Daniel H. Cook Associates, Inc.** is a New York business corporation with its principal place of business located at 253 W. 35th Street, 12th Floor, New York, NY, 10001. Service can be addressed to the Daniel H. Cook Associates, Inc. and sent to 253 W. 35th Street, 12th Floor, New York, NY, 10001.

20.     Defendant **Correction Officers Benevolent Association of Rockland County, Inc**. is a domestic corporation registered under the laws of New York with its principal place of business located in New York, New York. Correction Officers registered agent is Antoine Decolyse who may be served at The Corporation, P.O. Box 1131, New York, New York 10956.

## III.    JURISDICTION AND VENUE

21.    This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) numerous Class Members are citizens of a different state that is diverse from at least one Defendant, and (4) there are more than 100 Class Members.[10][11]

22.    The Court has general personal jurisdiction over Defendants because Defendants are citizens of New York, are registered to do business in New York, and have their principal place of business in this District.

23.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendants' principal place of business is in this District, and a substantial part of the events, acts, and omissions giving rise to Plaintiff's clams occurred in this District.

## IV.    FACTUAL ALLEGATIONS

### A.  Defendants and their Collection of Plaintiff's and the Class's PII.

24.    Correction Officers acquired, collected, and stored Plaintiff's PII as part of its business practices. By virtue of Correction Officer's relationship with DHCA, DHCA also acquired, collected, and stored Plaintiff's and Class Members' PII through the services it provided to Correction Officers.

---

[10] Defendant gave notice to the Maine Attorney General that at least 36,663 people were affected by this Data Breach, including residents in the states of Maryland, Oregon, California, New York, Rhode Island, Iowa, Kentucky, North Carolina, and Washington D.C https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/877ffa05-de26-4cee-b8ba-bee1810fb744.html (last visited Jan. 22, 2026)

[11] In Defendant's notice letter, it lists the contact information for the attorney's general of 8 states and Washington D.C., indicating that residents of these jurisdictions were affected by the Data Breach. *See* https://www.classaction.org/media/daniel-h-cook-associates-data-breach-letter-2026.pdf (last visited Jan. 22, 2026).

25.    Upon information and belief, Correction Officers hired DHCA as a third-party vendor which, collects, stores, and manages Correction Officers' members' Private Information.

26.    DHCA is a third-party administrator of self-funded benefits, including medical, dental, and optical benefits, as well as recordkeeping for the same.[12]

27.    As a condition of doing business, Correction Officers requires that its members and/or employees entrust it with highly sensitive personal and health information. In the ordinary course of receiving management service from DHCA, Correction Officers provided Plaintiff's and Class Members' Private Information to DHCA

28.    As part of its business practices, DHCA obtains, collects, uses, and derives a benefit from the Private Information of Plaintiff and Class Members.

29.    Defendants obtain, collect, use, and derive a benefit from the Private Information of Plaintiff and Class Members. DHCA uses the Private Information it collects to provide third-party administrator services, making a profit therefrom. DHCA would not be able to obtain revenue if not for the acceptance and use of Plaintiff's and the Class's Private Information

30.    By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Defendants assumed legal and equitable duties and knew or should have known they were responsible for protecting Plaintiff's and Class Members' Private Information from unauthorized disclosure

31.    DHCA failed to adopt reasonable and appropriate data security practices and procedures including administrative, physical security, and technical controls to safeguard Plaintiff's and the Class's Private Information. Correction Officers failed to ensure that DHCA

---

[12] https://dhcook.com/tpa-solutions/ (last visited Jan. 22, 2026).

implemented industry standard cyber security safeguards to protect Plaintiff's Private Information from unauthorized disclosure.

32.    Plaintiff and Class Members provided their Private Information to Defendants with the reasonable expectation and on the mutual understanding that Defendants would comply with their obligations to keep such information confidential and secure from unauthorized access.

33.    As a result of Defendants' negligence, Plaintiff's and Class Members' Private Information was accessed and/or stolen from DHCA's inadequately secured network in a large and preventable Data Breach.

**B.  The Data Breach.**

34.    On October 17, 2025, DHCA experienced a network disruption, investigated the matter, and discovered that files in its network system were accessed by an unknown third-party.[13] On or about January 12, 2026, DHCA learned that personal information contained within its network was affected by the Breach.[14]

35.    Upon information and belief, the information accessed and acquired in the Data Breach includes, at a minimum, names and Social Security numbers.[15]

36.    On January 17, 2026, DHCA notified the Maine Attorney General's office about the Breach and provided a sample notice of data security incident which contains Attorney General's officers contact information for affected individuals in the states of Maryland, Oregon, California, New York, Rhode Island, Iowa, Kentucky, North Carolina, and Washington D.C.[16]

---

[13] https://www.classaction.org/media/daniel-h-cook-associates-data-breach-letter-2026.pdf (last visited Jan. 22, 2026).
[14] *Id.*
[15] *Id.*
[16] See https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/877ffa05-de26-4cee-b8ba-bee1810fb744.html (last visited Jan. 22, 2026).

DHCA's sample notice of data security letter is posted on the Maine Attorney General's website.[17] Thus, the Data Breach affected individuals in various states.

37.     On or around January 16, 2026, DHCA began mailing individualized notices to impacted individuals. This notice to impacted individuals was 3 months after the breach was discovered by DHCA.

38.     The details of the root cause of the Data Breach, the vulnerabilities exploited, and the remedial measures undertaken to ensure a breach does not occur have not been shared with regulators or Plaintiff and Class members, who retain a vested interest in ensuring that their information remains protected.

39.     In recognition of the severity of the Data Breach, and the imminent risk of harm Plaintiff and the Class face, DHCA made a 24-month limited offering of credit monitoring through IDX and identity theft protection services.[18] Such an offering is wholly inadequate and will not prevent identity theft but will only alert Data Breach victims once identity theft has already occurred.

40.     DHCA was negligent and did not use reasonable security procedures and industry standard practices appropriate to the nature of the sensitive, unencrypted information it was maintaining for Plaintiff and Class Members, causing the exposure of Private Information for Plaintiff and Class Members. Similarly, Correction Officers failed to ensure that DHCA implemented adequate security safeguards to protect Plaintiff's and Class Members' Private Information.

41.     DHCA could and should have prevented this Data Breach by ensuring the files and

---

[17] *Id.*
[18] *Id.*

servers containing Plaintiff's and Class Members' Private Information were properly secured and encrypted but failed to do so. Correction Officers could and should have ensured that DHCA had the security safeguards appropriate to protect Plaintiff's and Class Members' Private Information.

42.     Because Defendants had a duty to protect Plaintiff's and Class Members' Private Information, Defendants should have known through readily available and accessible information about potential threats for the unauthorized exfiltration and misuse of such information.

43.     All in all, Defendants failed to take the necessary precautions required to safeguard and protect Plaintiff's and Class Members' Private Information from unauthorized access and exploitation.

44.     Defendants' actions represent a flagrant disregard of the rights of Plaintiff and the Class, both as to privacy and property.

45.     As such, Plaintiff and the Class have suffered harm and continue to be at an imminent and impending risk of identity theft and fraud.

### C. Cybercriminals Have Used and Will Continue to Use Plaintiff's and the Class's PII to Defraud Them.

46.     PII is of great value to hackers and cybercriminals, and the data stolen in the Data Breach can and will be used in a variety of ways by criminals to exploit Plaintiff and the Class Members and to profit from their misfortune.

47.     Each year, identity theft causes tens of billions of dollars of losses to victims in the United States.[19]

48.     For example, with the PII stolen in the Data Breach, including Social Security

---

[19] *Facts + Statistics: Identity Theft and Cybercrime*, INSURANCE INFO. INST., https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (discussing Javelin Strategy & Research's report "2018 Identity Fraud: Fraud Enters a New Era of Complexity").

numbers, identity thieves can open financial accounts, apply for credit, file fraudulent tax returns, commit crimes, create false driver's licenses and other forms of identification and sell them to other criminals or undocumented immigrants, steal government benefits, give breach victims' names to police during arrests, and many other harmful forms of identity theft.[20] These criminal activities have and will result in devastating financial and personal losses to Plaintiff and the Class Members.

49.    Social security numbers are particularly sensitive pieces of personal information. As the Consumer Federation of America explains:

> **Social Security number.** *This is the most dangerous type of personal information in the hands of identity thieves* because it can open the gate to serious fraud, from obtaining credit in your name to impersonating you to get medical services, government benefits, your tax refunds, employment – even using your identity in bankruptcy and other legal matters. It's hard to change your Social Security number and it's not a good idea because it is connected to your life in so many ways.[21]

50.    PII is such a valuable commodity to identity thieves that once it has been compromised, criminals will use it for years.[22]

51.    This was a financially motivated Breach, as the only reason the cybercriminals go through the trouble of running targeted cyberattacks against companies like DHCA is to get ransom money and/or information that they can monetize by selling on the black market for use in the kinds of criminal activity described herein.

---

[20] *See, e.g.*, Christine DiGangi, *What Can You Do with a Stolen Social Security Number*, CREDIT.COM (June 29, 2020), https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with-your-social-security-number-108597/.

[21] *Dark Web Monitoring: What You Should Know*, CONSUMER FEDERATION OF AMERICA (Mar. 19, 2019), https://consumerfed.org/consumer_info/dark-web-monitoring-what-you-should-know/ (emphasis added).

[22] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO, July 5, 2007, available at https://www.gao.gov/products/gao-07-737.

52.    Indeed, a social security number, date of birth, and full name can sell for $60 to $80 on the digital black market.[23]

53.    "[I]f there is reason to believe that your personal information has been stolen, you should assume that it can end up for sale on the dark web."[24]

54.    These risks are both certainly impending and substantial. As the Federal Trade Commission ("FTC") has reported, if hackers get access to PII, ***they will use it***.[25]

55.    Hackers may not use the information right away, but this does not mean it will not be used. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information ***may continue for years***. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[26]

56.    For instance, with a stolen social security number, which is part of the PII compromised in the Data Breach, someone can open financial accounts, get medical care, file fraudulent tax returns, commit crimes, and steal benefits.[27]

57.    Identity theft victims must spend countless hours and large amounts of money

---

[23] Michael Kan, *Here's How Much Your Identity Goes for on the Dark Web* (Nov. 15, 2017), https://www.pcmag.com/news/heres-how-much-your-identity-goes-for-on-the-dark-web.

[24] *Dark Web Monitoring: What You Should Know*, CONSUMER FEDERATION OF AMERICA (Mar. 19, 2019), https://consumerfed.org/consumer_info/dark-web-monitoring-what-you-should-know/.

[25] Ari Lazarus, *How fast will identity thieves use stolen info?*, MILITARY CONSUMER (May 24, 2017), https://www.militaryconsumer.gov/blog/how-fast-will-identity-thieves-use-stolen-info.

[26] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO (July 5, 2007), available at https://www.gao.gov/products/gao-07-737.

[27] *See, e.g.*, Christine DiGangi, *What Can You Do with a Stolen Social Security Number*, CREDIT.COM (June 29, 2020), https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with-your-social-security-number-108597/.

repairing the impact to their credit so as to protect themselves in the future.[28]

58.    DHCA limited offer of identity monitoring to Plaintiff and the Class is woefully inadequate and will not fully protect Plaintiff from the damages and harm caused by its failures.

59.    The full scope of the harm has yet to be realized. There may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used.

60.    Once the limited time monitoring offer has expired, Plaintiff and Class Members will need to pay for their own identity theft protection and credit monitoring for the rest of their lives due to Defendants' negligence.

61.    Furthermore, identity monitoring only alerts someone to the fact that they have already been the victim of identity theft (*i.e.*, fraudulent acquisition and use of another person's PII)—it does not prevent identity theft.[29]  Nor can an identity monitoring service remove personal information from the dark web.[30]

62.    "The people who trade in stolen personal information [on the dark web] won't cooperate with an identity theft service or anyone else, so it's impossible to get the information removed, stop its sale, or prevent someone who buys it from using it."[31]

---

[28] *Guide for Assisting Identity Theft Victims*, FEDERAL TRADE COMMISSION (Sept. 2013), *available at* https://www.global-screeningsolutions.com/Guide-for-Assisting-ID-Theft-Victims.pdf.

[29] *See, e.g.*, Kayleigh Kulp, *Credit Monitoring Services May Not Be Worth the Cost*, CNBC (Nov. 30, 2017, 9:00 AM), https://www.cnbc.com/2017/11/29/credit-monitoring-services-may-not-be-worth-the-cost.html.

[30] *Dark Web Monitoring: What You Should Know*, CONSUMER FEDERATION OF AMERICA (Mar. 19, 2019), https://consumerfed.org/consumer_info/dark-web-monitoring-what-you-should-know.

[31] *Id.*

63.    As a direct and proximate result of the Data Breach, Plaintiff and the Class have been damaged and have been placed at an imminent, immediate, and continuing increased risk of harm from continued fraud and identity theft. Plaintiff and the Class must now take the time and effort to mitigate the actual and potential impact of the Data Breach on their everyday lives, including placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

64.    Even more seriously is the identity restoration that Plaintiff and other Class Members must go through, which can include spending countless hours filing police reports, filling out IRS forms, Federal Trade Commission checklists, Department of Motor Vehicle driver's license replacement applications, and calling financial institutions to cancel fraudulent credit applications, to name just a few of the steps Plaintiff and the Class must take.

65.    Plaintiff and the Class have or will experience the following concrete and particularized harms for which they are entitled to compensation, including:

    a.  Actual identity theft;

    b.  Trespass, damage to, and theft of their personal property including PII;

    c.  Improper disclosure of their PII;

    d.  The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals;

    e.  Loss of privacy suffered as a result of the Data Breach, including the harm of knowing cyber criminals have their PII;

     f.   Ascertainable losses in the form of time taken to respond to identity theft and attempt to restore identity, including lost opportunities and lost wages from uncompensated time off from work;

     g.   Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the Data Breach;

     h.   The loss of use of and access to their credit, accounts, and/or funds;

     i.   Damage to their credit due to fraudulent use of their PII; and/or

     j.   Increased cost of borrowing, insurance, deposits, and the inability to secure more favorable interest rates because of a reduced credit score.

66.    Moreover, Plaintiff and Class Members have an interest in ensuring that their Private Information, which remains in the possession of Defendants, is protected from further breaches by the implementation of industry standard security measures and safeguards. Defendants have shown themselves wholly incapable of protecting Plaintiff's and the Class's Private Information.

67.    Plaintiff and Class Members also have an interest in ensuring that their Private Information that was provided to Correction Officers and DHCA is removed from all Defendants' servers, systems, and files.

68.    DHCA itself acknowledged the harm caused by the Data Breach because it offered Plaintiff and Class Members woefully inadequate monitoring services. A limited time of identity theft and monitoring services is, however, inadequate to protect Plaintiff and Class Members from a lifetime of identity theft risk.

69.    DHCA further acknowledged that the Data Breach would cause inconvenience to affected individuals and that financial harm would likely occur because it advised individuals to enroll in credit monitoring.

70.    Defendants were aware, or should have been aware, of the risks and harm that could result from inadequate data security.

71.    At DHCA's suggestion, Plaintiff and the Class are desperately trying to mitigate the damage that Defendants have caused them.

72.    Given the kind of Private Information Defendants made accessible to hackers, however, Plaintiff and the Class are certain to incur additional damages. Because identity thieves have their PII, Plaintiff and all Class Members will need to have identity theft monitoring protection for the rest of their lives. Some may even need to go through the long and arduous process of getting a new Social Security number, with all the loss of credit and employment difficulties that come with a new number.[32]

73.    The risks of harm to Plaintiff and Class Members were reasonably foreseeable and Defendants knew or should have known of these foreseeable risks of harm.

74.    None of this should have happened because the Data Breach was entirely preventable.

**D.  Defendants were Aware of the Risk of Cyberattacks.**

75.    Data security breaches have dominated the headlines for the last two decades. And it doesn't take an IT industry expert to know it. The general public can tell you the names of some

---

[32] *What happens if I change my Social Security number*, LEXINGTON LAW (Aug. 10, 2022), https://www.lexingtonlaw.com/blog/credit-101/will-a-new-social-security-number-affect-your-credit.html.

of the biggest cybersecurity breaches: Target,[33] Yahoo,[34] Marriott International,[35] Chipotle, Chili's, Arby's,[36] and others.[37]

76.     The number of data breach victims has surpassed 1 billion for the first half of 2024, according to the Identity Theft Resource Center.[38]

77.     Defendants should certainly have been aware, and indeed were aware, that DHCA was at risk of a data breach that could expose the PII that it collected and maintained.

78.     Defendants were clearly aware of the risks DHCA was taking and the harm that could result from inadequate data security but threw caution to the wind.

79.     DHCA (1) had deficient security measures to protect the Private Information it stored for its third-party administrator services; (2) was aware or should have been aware of the risk of harm to the beneficiaries of its services in the event of a data breach; (3) knew or should have known of the foreseeable harms caused by cyberattacks; and (4) negligently failed to safeguard Plaintiff's and Class Members' Private Information. Similarly, Correction Officers

---

[33] Michael Kassner, *Anatomy of the Target Data Breach: Missed Opportunities and Lessons Learned*, ZDNET (Feb. 2, 2015), https://www.zdnet.com/article/anatomy-of-the-target-data-breach-missed-opportunities-and-lessons-learned/.

[34] Martyn Williams, *Inside the Russian Hack of Yahoo: How They Did It*, CSOONLINE.COM (Oct. 4, 2017), https://www.csoonline.com/article/3180762/inside-the-russian-hack-of-yahoo-how-they-did-it.html.

[35] Patrick Nohe, *The Marriot Data Breach: Full Autopsy*, THE SSL STORE: HASHEDOUT (Mar. 22, 2019), https://www.thesslstore.com/blog/autopsying-the-marriott-data-breach-this-is-why-insurance-matters/ (last visited Oct. 9, 2023).

[36] Alfred Ng, *FBI Nabs Alleged Hackers in Theft of 15M Credit Cards from Chipotle, Others*, CNET (Aug. 1, 2018, 12:58 PM), https://www.cnet.com/news/fbi-nabs-alleged-hackers-in-theft-of-15m-credit-cards-from-chipotle-others/?ftag=CMG-01-10aaa1b.

[37] *See, e.g.*, Michael Hill and Dan Swinhoe, *The 15 Biggest Data Breaches of the 21st Century*, CSO ONLINE (Nov. 8, 2022), https://www.csoonline.com/article/2130877/the-biggest-data-breaches-of-the-21st-century.html.

[38] https://www.usatoday.com/story/money/2024/07/18/data-breach-what-to-do/74441060007/.

failed to follow standard security practices by negligently failing to ensure that DHCA had the adequate security measures to protect Plaintiff's and Class Members' Private Information.

80.     Despite its assurances to the people it administers benefits plans for regarding safeguarding PII, DHCA negligently failed to implement adequate security measures to safeguard the Private Information of Plaintiff and Class Members. Similarly, Correction Officers failed to ensure that DHCA had adequate security safeguards to protect Plaintiff's and Class Members' Private Information DHCA was storing in its systems.

### E. Defendants Failed to Comply with FTC Guidelines and Industry Standards for Cybersecurity.

81.     Data breaches are preventable.[39] As Lucy Thompson wrote in the DATA BREACH AND ENCRYPTION HANDBOOK, "In almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[40] She added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised . . . ."[41]

82.     "Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures. . . . Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a *data breach never occurs*."[42]

83.     In a data breach like this, many failures laid the groundwork for the Breach.

---

[39] Lucy L. Thomson, "Despite the Alarming Trends, Data Breaches Are Preventable," *in* DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thompson, ed., 2012), available at https://lawcat.berkeley.edu/record/394088.
[40] *Id.* at 17.
[41] *Id.* at 28.
[42] *Id.*

84.     The FTC has published guidelines that establish reasonable data security practices for businesses.

85.     The FTC guidelines emphasize the importance of having a data security plan, regularly assessing risks to computer systems, and implementing safeguards to control such risks.[43]

86.     The FTC guidelines establish that businesses should protect the confidential information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies for installing vendor-approved patches to correct security problems.

87.     The FTC guidelines also recommend that businesses utilize an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating hacking attempts; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

88.     Upon information and belief, DHCA failed to maintain many reasonable and necessary industry standards necessary to prevent a data breach, including the FTC's guidelines. Correction Officers failed to ensure that DHCA maintained the necessary industry standards to prevent the Data Breach.

89.     Correction Officers should have been aware, and indeed was aware, that DHCA was at risk of a data breach that could expose the Private Information that Correction Officers' provided to DHCA. However, Correction Officers failed to inquire into DHCA's cybersecurity

---

[43] *Protecting Personal Information: A Guide for Business*, FTC, available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

safeguards to ensure that DHCA implemented and complied with industry standards, contractual obligations, and FTC guidelines.

90.    Correction Officers was aware of the risks and harm that could result from DHCA's inadequate data security.

91.    Correction Officers failed to ensure that DHCA met the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework, NIST Special Publications 800-53, 53A, or 800-171; the Federal Risk and Authorization Management Program (FEDRAMP); or the Center for Internet Security's Critical Security Controls (CIS CSC), which are respected authorities in reasonable cybersecurity readiness.

92.    As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[44]

93.    To prevent the Data Breach, Correction Officers should have ensured that DHCA complied with the following measures as recommended by the Federal Bureau of Investigation:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

---

[44] *See* How to Protect Your Networks from RANSOMWARE, at 3, available at https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view.

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

- Configure firewalls to block access to known malicious IP addresses.

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment.

- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[45]

94.    According to information and belief, DHCA failed to do any of the above and Defendant Correction Officers failed to ensure that DHCA complied with cybersecurity industry standards.

95.    Further, to prevent and detect ransomware attacks, upon information and belief Correction Officers failed to ensure DHCA recommended its employees, as recommended by the United States Cybersecurity & Infrastructure Security Agency, take the following measures:

- **Update and patch your computer**.  Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks….

- **Use caution with links and when entering website addresses**.  Be careful when clicking directly on links in emails, even if the sender appears to be someone you know. Attempt to independently verify website addresses (e.g., contact your organization's helpdesk, search the internet for the sender organization's website or the topic mentioned in the email). Pay attention to the website addresses you click on, as DHCAl as those you enter yourself. Malicious website addresses often appear almost identical to legitimate sites,

---

[45] *Id.* at 3–4.

often using a slight variation in spelling or a different domain (e.g., .com instead of .net)….

- **Open email attachments with caution**. Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed files or ZIP files.

- **Keep your personal information safe**. Check a website's security to ensure the information you submit is encrypted before you provide it….

- **Verify email senders**. If you are unsure whether or not an email is legitimate, try to verify the email's legitimacy by contacting the sender directly. Do not click on any links in the email. If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.

- **Inform yourself**. Keep yourself informed about recent cybersecurity threats and up to date on ransomware techniques. You can find information about known phishing attacks on the Anti-Phishing Working Group website. You may also want to sign up for CISA product notifications, which will alert you when a new Alert, Analysis Report, Bulletin, Current Activity, or Tip has been published.

- **Use and maintain preventative software programs**. Install antivirus software, firewalls, and email filters—and keep them updated—to reduce malicious network traffic….[46]

---

[46] *See* Security Tip (ST19-001) Protecting Against Ransomware (original release date Apr. 11, 2019), available at https://www.cisa.gov/news-events/news/protecting-against-ransomware.

96.    In addition, Correction Officers could and should have ensured that DHCA implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

- **Secure internet-facing assets**

    - Apply latest security updates

    - Use threat and vulnerability management

    - Perform regular audit; remove privileged credentials

- **Thoroughly investigate and remediate alerts**

    - Prioritize and treat commodity malware infections as potential full compromise;

- **Include IT Pros in security discussions**

    - Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

- **Build credential hygiene**

    - Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords

- **Apply principle of least-privilege**

    - Monitor for adversarial activities

    - Hunt for brute force attempts

    - Monitor for cleanup of Event Logs

    - Analyze logon events

- **Harden infrastructure**

24

-     Use Windows Defender Firewall

-     Enable tamper protection

-     Enable cloud-delivered protection

-     Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[47]

97.    Given that DHCA was storing the PII of Correction Officers' employees and/or members, DHCA could have and should have implemented all of the above measures to prevent and detect cyberattacks and Correction Officers owed a duty to Plaintiff and Class Members to ensure that DHCA did so.

98.    Specifically, among other failures, Defendants had far too much confidential unencrypted information held on its systems. Such PII should have been segregated into an encrypted system.[48]

99.    Moreover, it is a well-established industry standard practice for a business to dispose of confidential PII once it is no longer needed.

100.    The FTC, among others, has repeatedly emphasized the importance of disposing unnecessary PII, saying simply: "Keep sensitive data in your system only as long as you have a business reason to have it.  Once that business need is over, properly dispose of it.  If it's not on your system, it can't be stolen by hackers."[49]  DHCA, rather than following this basic standard of

---

[47] *See* Human-operated ransomware attacks: A preventable disaster (Mar 5, 2020), *available at* https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/.

[48] *See, e.g.,* Adnan Raja, *How to Safeguard Your Business Data with Encryption*, FORTRA (Aug. 14, 2018), https://digitalguardian.com/blog/how-safeguard-your-business-data-encryption.

[49] *Protecting Personal Information: A Guide for Business*, FTC, *available at* https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf, at p. 6.

care, kept thousands of individuals' unencrypted PII indefinitely.

101.    In sum, the Data Breach could have readily been prevented through the use of industry standard network segmentation and encryption of all PII.

102.    Defendants failed to follow FTC guidelines and industry standards for safeguarding and protecting the PII of Plaintiff and Class Members against unauthorized disclosures to third parties.

103.    Further, the scope of the Data Breach could have been dramatically reduced had Correction Officers and DHCA utilized proper record retention and destruction practices—but DHCA negligently did no such thing and Correction Officers failed to ensure that DHCA utilized proper record retention and security safeguards.

### F.  Plaintiff's Individual Experience.

***Plaintiff Ana O'Neal***

104.    Plaintiff O'Neal is a former member of the Correction Officers' Benevolent Association who, upon information and belief, hired DHCA as a third-party vendor to administer Correction Officers' offered benefits.

105.    Plaintiff O'Neal was required to provide her Private Information to DHCA, through Correction Officers, as part of Correction Officers' business practices.

106.    Plaintiff O'Neal entrusted her Private Information to Correction Officers, as the record custodian of her Private Information, with the reasonable expectation and mutual understanding that Correction Officers would keep her Private Information secure from unauthorized access and ensure that Correction Officers' vendors met FTC and industry standards regarding cybersecurity.

107.    Upon information and belief, Defendants were in possession of Plaintiff's Private

Information before, during, and after the Data Breach.

108.    Because of the Data Breach, there is no doubt Plaintiff O'Neal's highly confidential Private Information is in the hands of cybercriminals. Reason being, the *modus operandi* of cybercriminals is to steal data they can exploit by selling on the dark web. As such, Plaintiff O'Neal and the Class are at an imminent risk of identity theft and fraud.

109.    In December 2025, Plaintiff O'Neal suffered fraudulent activity on her debit card when an unauthorized purchase of around $50 was made. Upon seeing this unauthorized charge, Plaintiff O'Neal contacted her bank and a new debit card was issued to her. The occurrence of this fraudulent activity can be fairly traced to this Data Breach since it occurred after the Data Breach and, to the best of Plaintiff O'Neal's knowledge, she has not been the victim of any other data breach.

110.    As a result of the Data Breach, Plaintiff O'Neal estimates she has already expended hours of her time mitigating the harms of the Data Breach and will need to do so on a weekly basis. As such, Plaintiff O'Neal has suffered loss of productivity from taking time to address and attempt to ameliorate, mitigate, and address the future consequences of the Data Breach, including investigating the Data Breach, investigating how best to ensure that she is protected from identity theft, and reviewing account statements, credit reports, and/or other information.

111.    Plaintiff O'Neal places significant value on the security of her Private Information and does not readily disclose it. Plaintiff O'Neal has never knowingly transmitted unencrypted Private Information over the internet or any other unsecured source.

112.    Plaintiff O'Neal has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such a risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the Private

Information compromised by the Data Breach. Indeed, DHCA acknowledged the present and increased risk of future harm Plaintiff O'Neal, and the Class now face by offering temporary, non-automatic credit monitoring services to affected individuals.

113.    Knowing that thieves intentionally targeted and accessed her Private Information, including her Social Security number, has caused Plaintiff O'Neal great anxiety beyond mere worry.

114.    The Data Breach has caused Plaintiff O'Neal to suffer fear, anxiety, and stress, which has been compounded by Defendants' delay in noticing him of the fact that her Private Information was accessed and/or acquired by criminals as a result of the Data Breach.

115.    Plaintiff O'Neal has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains in the possession of Defendants, is protected, and safeguarded from future data breaches. Absent Court intervention, Plaintiff's and the Class's Private Information will be wholly unprotected and at-risk of future data breaches.

116.    Plaintiff O'Neal has suffered injuries directly and proximately caused by the Data Breach, including: (i) theft of her valuable Private Information; (ii) the imminent and certain impending injury flowing from anticipated fraud and identity theft posed by her Private Information being placed in the hands of cybercriminals; (iii) damages to and diminution in value of her Private Information that was entrusted to Defendants with the understanding that Defendants would safeguard this information against disclosure; (iv) loss of the benefit of the bargain with Defendants to provide adequate and reasonable data security—*i.e.*, the difference in value between what Plaintiff O'Neal should have received from Defendants and DHCA's defective and deficient performance of that obligation by failing to provide reasonable and adequate data security and failing to protect her Private Information; and (v) continued risk to her Private Information, which

28

remains in the possession of Defendants and which is subject to further breaches so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information that was entrusted to Defendants.

## V.    CLASS ACTION ALLEGATIONS

117.    Plaintiff incorporates by reference all preceding paragraphs as if fully restated here.

118.    Pursuant to Federal Rule of Civil Procedure 23, Plaintiff seeks certification of the following class:

> **All individuals whose Private Information was accessed and/or acquired in the Data Breach announced by Defendant DHCA, including all individuals who received a notice letter (the "Class").**

119.    Excluded from the Class are Defendants, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, principals, servants, partners, joint venturers, or entities controlled by Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or their officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

120.    Plaintiff reserves the right to amend the above definition or to propose subclasses in subsequent pleadings and motions for class certification.

121.    Plaintiff anticipates the issuance of notice setting forth the subject and nature of the instant action to the proposed Class. Upon information and belief, Defendants' own business records or electronic media can be utilized for the notice process.

122.    **Numerosity:** The proposed Class is so numerous that joinder of all members is impracticable. Although the true number of affected individuals is unknown to Plaintiff, upon

information and belief, Plaintiff estimates that the Class is comprised of 36,663, if not more.[50] The number of affected individuals may be obtained by Defendants' records.

123.    **Typicality:** Plaintiff's claims are typical of the claims of the Class. Plaintiff and all members of the Class were injured through DHCA's uniform misconduct. DHCA's inadequate data security gave rise to Plaintiff's claims and are identical to those that give rise to the claims of every other Class member because Plaintiff and each member of the Class had their sensitive PII compromised in the same way by the same conduct of Defendants.

124.    **Adequacy:** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the Class; Plaintiff has retained counsel competent and highly experienced in data breach class action litigation; and Plaintiff and Plaintiff's counsel intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and their counsel.

125.    **Superiority:** A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiff and the Class. The injury suffered by each individual class member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult if not impossible for members of the Class individually to effectively redress Defendants' wrongdoing. Even if Class Members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties

---

[50] https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/877ffa05-de26-4cee-b8ba-bee1810fb744.html (last visited Jan. 22, 2026).

and provides benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

126.    Information concerning Defendants' policies is available from Defendants' records.

127.    **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include:

a.   Whether Defendants engaged in the wrongful conduct alleged herein;

b.   Whether Defendants failed to adequately safeguard Plaintiff's and the Class's PII;

c.   Whether Defendants owed a duty to Plaintiff and the Class to adequately protect their PII, and whether they breached this duty;

d.   Whether Defendants breached their duties to Plaintiff and the Class;

e.   Whether DHCA failed to provide adequate cyber security;

f.   Whether Defendants knew or should have known that DHCA's computer and network security systems were vulnerable to cyber-attacks;

g.   Whether Defendants' conduct, including its failure to act, resulted in or was the proximate cause of the breach of its company network;

h.   Whether Defendants were negligent in permitting unencrypted PII off vast numbers of individuals to be stored within DHCA's network;

i.   Whether Defendants were negligent in failing to adhere to reasonable retention policies, thereby greatly increasing the size of the Data Breach;

j.  Whether Defendants breached implied contractual duties to Plaintiff and the Class to use reasonable care in protecting their PII;

k.  Whether Defendants failed to adequately respond to the Data Breach, including failing to investigate it diligently and notify affected individuals in the most expedient time possible and without unreasonable delay, and whether this caused damages to Plaintiff and the Class;

l.  Whether Defendants continue to breach duties to Plaintiff and the Class;

m.  Whether Plaintiff and the Class suffered injury as a proximate result of Defendants' negligent actions or failures to act;

n.  Whether Plaintiff and the Class are entitled to recover damages, equitable relief, and other relief; and

o.  Whether Defendants' actions alleged herein constitute gross negligence, and whether Plaintiff and Class Members are entitled to punitive damages.

## VI.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### NEGLIGENCE
### (On Behalf of Plaintiff and the Class)

128.    Plaintiff re-alleges and incorporates by reference all preceding factual paragraphs as though fully set forth herein.

129.    Correction Officers solicited, gathered, and stored the Private Information of Plaintiff and Class Members as part of its business practices, which was in turn provided to DHCA so that DHCA could provide services to Correctional Officers.

130.    Upon accepting and storing the Private Information of Plaintiff and Class Members on its computer systems  and networks, Defendants undertook and owed a duty to Plaintiff and

32

Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information of Plaintiff and the Class from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

131.    Correction Officers had full knowledge of the sensitivity of the Private Information that Correction Officers provided to DHCA and the types of harm that Plaintiff and Class Members could and would suffer if the Private Information was wrongfully disclosed. Plaintiff and Class Members were the foreseeable victims of any inadequate safety and security practices. Plaintiff and the Class Members had no ability to protect their Private Information that was in Defendants' possession. As such, a special relationship existed between Defendants and Plaintiff and the Class.

132.    Because of this special relationship, Defendants required Plaintiff and Class Members to provide their Private Information, including names, Social Security numbers, and other Private Information.

133.    Implied in these exchanges was a promise by Defendants to ensure that the Private Information of Plaintiff and Class Members in their possession was only used for the provided purpose and that Defendants would destroy any Private Information that it was not required to maintain.

134.    As part of this special relationship, Defendants had a duty to perform with skill, care, and reasonable expedience and faithfulness.

135.    Through Defendants' acts and omissions, including DHCA's failure to provide adequate data security, its failure to protect Plaintiff's and Class Members' Private Information from being foreseeably accessed, Correction Officers' failure to ensure that DHCA had adequate security safeguards, and Defendants' improper retention of Private Information it was not required to maintain, Defendants negligently failed to observe and perform their duty.

136.    Plaintiff and Class Members did not receive the benefit of the bargain with Defendants, because providing their Private Information was in exchange for Defendants' implied agreement to secure and keep it safe and to delete it once no longer required.

137.    Defendants was aware of the fact that cybercriminals routinely target companies and corporations through cyberattacks in an attempt to steal Private Information. In other words, Defendants knew of a foreseeable risk to its data security systems but DHCA failed to implement reasonable security measures and Correction Officers failed to ensure that DHCA implemented reasonable security measures.

138.    Defendants owed Plaintiff and the Class Members a common law duty to use reasonable care to avoid causing foreseeable risk of harm to Plaintiff and the Class when obtaining, storing, using, and managing personal information, including taking action to reasonably safeguard or delete such data and providing notification to Plaintiff and the Class Members of any breach in a timely manner so that appropriate action could be taken to minimize losses.

139.    Defendants' duty extended to protecting Plaintiff and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B.

140.    Defendants had duties to protect and safeguard the Private Information of Plaintiff and the Class from being vulnerable to cyberattacks by taking common-sense precautions when dealing with sensitive Private Information. Additional duties that Defendants owed Plaintiff, and the Class include:

    a.      To exercise reasonable care in designing, implementing, maintaining, monitoring, and testing DHCA's networks, systems, email accounts, protocols, policies, procedures and practices to ensure that Plaintiff's and Class Members' Private Information was adequately secured from impermissible release, disclosure, and publication;

    b.      To protect Plaintiff's and Class Members' Private Information in their possession by using reasonable and adequate security procedures and systems;

    c.      To implement processes to quickly detect a data breach, security incident, or intrusion involving its networks, email accounts, and servers; and

    d.      To promptly notify Plaintiff and Class Members of any data breach, security incident, or intrusion that affected or may have affected their Private Information.

141.   Plaintiff and the Class were the intended beneficiaries of Defendants' duties, creating a special relationship between them and Defendants. Defendants were in a position to ensure that DHCA;s systems were sufficient to protect the Private Information that Plaintiff and the Class had entrusted to it.

142.   Plaintiff's injuries and damages, as described herein, are a reasonably certain consequence of Defendants' negligence and breach of their duties.

143.   Defendants breached their duties of care by failing to adequately protect Plaintiff's and Class Members' Private Information. Defendants breached their duties by, among other things:

    a.      Failing to exercise reasonable care in obtaining, retaining securing, safeguarding, and protecting the Private Information in its possession;

    b.      Failing to protect the Private Information in their possession using reasonable and adequate security procedures and systems;

c.    Failing to consistently enforce security policies aimed at protecting Plaintiff and the Class's Private Information;

d.    Failing to implement processes to quickly detect data breaches, security incidents, or intrusions;

e.    Failing to promptly notify Plaintiff and Class Members of the Data Breach that affected their Private Information.

144.    Defendants' willful failure to abide by these duties was wrongful, reckless, and grossly negligent considering the foreseeable risks and known threats.

145.    As a direct and proximate result of Defendants' negligent conduct, including but not limited to its failure to implement and maintain reasonable data security practices and procedures as described above, Plaintiff and the Class have suffered damages and are at imminent risk of additional harms and damages (as alleged above).

146.    Through Defendants' acts and omissions described herein, including but not limited to Defendants' failure to protect the Private Information of Plaintiff and Class Members from being stolen and misused, Defendants unlawfully breached their duties to use reasonable care to adequately protect and secure the Private Information of Plaintiff and Class Members while it was within DHCA's possession and control.

147.    Further, through its failure to provide timely and clear notification of the Data Breach to Plaintiff and Class Members, Defendants prevented Plaintiff and Class Members from taking meaningful, proactive steps to secure their Private Information and mitigating damages.

148.    Plaintiff and Class Members could have taken actions earlier had they been timely notified of the Data Breach.

36

149.    Plaintiff and Class Members could have enrolled in credit monitoring, could have instituted credit freezes, and could have changed their passwords, among other things, had they been alerted to the Data Breach more quickly.

150.    Plaintiff and Class Members have suffered harm from the delay in notifying them of the Data Breach.

151.    As a direct and proximate cause of Defendants' conduct, including but not limited to their failure to implement and maintain reasonable security practices and procedures, Plaintiff and Class Members have suffered, as Plaintiff have, and/or will suffer injury and damages, including but not limited to: (i) the loss of the opportunity to determine for themselves how their Private Information is used; (ii) the publication and/or theft of their Private Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information, including the need for substantial credit monitoring and identity protection services for an extended period of time; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest and recover from tax fraud and identity theft; (v) costs associated with placing freezes on credit reports and password protections; (vi) anxiety, emotional distress, loss of privacy, and other economic and non-economic losses; (vii) the continued risk to their Private Information, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information of the people it administers benefits for in its continued possession; and (viii) future costs in terms of time, effort and money that will be expended to prevent, detect, contest, and repair the inevitable and continuing consequences of

37

compromised Private Information for the rest of their lives. Thus, Plaintiff and the Class are entitled to damages in an amount to be proven at trial.

152.    The damages Plaintiff and the Class have suffered (as alleged above) and will suffer were and are the direct and proximate result of Defendants' negligent conduct.

153.    Plaintiff and the Class have suffered injury and are entitled to actual and punitive damages in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**
**NEGLIGENCE *PER SE***
**(On Behalf of Plaintiff and the Class)**

154.    Plaintiff re-alleges and incorporates by reference all preceding factual paragraphs as though fully set forth herein.

155.    Pursuant to the FTC Act, 15 U.S.C. § 45(a), DHCA and Correction Officers had a duty to Plaintiff and the Class to provide fair and adequate computer systems and data security to safeguard the Private Information of Plaintiff and the Class.

156.    The FTC Act prohibits "unfair practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendants, of failing to use reasonable measures to protect Private Information. The FTC publications and orders described above also formed part of the basis of Defendants' duty in this regard.

157.    Defendants gathered and stored the Private Information of Plaintiff and the Class as part of their business which affects commerce.

158.    Correction Officers violated the FTC Act by failing to ensure that DHCA use reasonable measures to protect the Private Information of Plaintiff and the Class and by not complying with applicable industry standards, as described herein.

159.    Correction Officers breached its duties to Plaintiff and the Class under the FTC Act by failing to ensure that DHCA provide fair, reasonable, or adequate computer systems and/or data security practices to safeguard Plaintiff's and Class Members' Private Information, and by failing to provide prompt notice without reasonable delay.

160.    Defendants' multiple failures to comply with applicable laws and regulations constitutes negligence *per se*.

161.    Plaintiff and the Class are within the class of persons that the FTC Act was intended to protect.

162.    The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against.

163.    Defendants breached their duties to Plaintiff and the Class under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and the Class's Private Information.

164.    Defendants breached their duties to Plaintiff and the Class by unreasonably delaying and failing to provide notice of the Data Breach expeditiously and/or as soon as practicable to Plaintiff and the Class.

165.    Defendants' violations of the FTC Act constitute negligence *per se*.

166.    As a direct and proximate result of Defendants' negligence *per se*, Plaintiff and the Class have suffered, and continue to suffer, damages arising from the Data Breach, as alleged above.

167.    The injury and harm that Plaintiff and Class Members suffered (as alleged above) was the direct and proximate result of Defendants' negligence *per se*.

168.    Plaintiff and the Class have suffered injury and are entitled to damages in amounts to be proven at trial.

### THIRD CAUSE OF ACTION
### BREACH OF IMPLIED CONTRACT
### (On Behalf of Plaintiff and the Class)

169.    Plaintiff re-alleges and incorporates by reference all preceding factual paragraphs as though fully set forth herein.

170.    Plaintiff and the Class Members entered into implied contracts with Defendants under which Defendants agreed to safeguard and protect their Private Information and to timely and accurately notify Plaintiff and Class Members that their information had been breached and compromised.

171.    Plaintiff and the Class were required to, and delivered, their Private Information to Correction Officers, who in turn provided said Private Information to DHCA as part of the process of obtaining third-party administration services.

172.    Defendants impliedly promised and represented to protect Plaintiff's and Class Members' Private Information.

173.    In delivering, directly or indirectly, their Private Information to Defendants and paying for administration of their employment benefits, Plaintiff and Class Members intended and understood that Correction Officers would adequately safeguard their Private Information by ensuring that its third-party vendor, DHCA, implemented adequate cybersecurity safeguards.

174.    Plaintiff and Class Members reasonably expected that the Private Information they entrusted to Defendants, in order to receive third-party administration services, would remain confidential and would not be shared or disclosed to criminal third parties.

175.    Plaintiff and Defendants had a mutual understanding that Defendants would implement and maintain adequate and reasonable data security practices and procedures to protect

40

Plaintiff's and Class Members' sensitive Private Information. Plaintiff and Defendants also shared an expectation and understanding that Defendants would not share or disclose, whether intentionally or unintentionally, the sensitive Private Information in their possession and control.

176.    Based on Defendants' representations, legal obligations, and acceptance of Plaintiff's and Class Members' Private Information, Defendants had a duty to safeguard the Private Information in its possession and use reasonable data security practices.

177.    When Plaintiff and Class Members paid money and provided their Private Information to Defendants, either directly or indirectly, in exchange for goods or services, they entered into implied contracts with Defendants.

178.    Defendants entered into implied contracts with Plaintiff and the Class under which Defendants agreed to comply with their statutory and common law duties to safeguard and protect Plaintiff's and Class Members' Private Information and to timely notify Plaintiff and Class Members of a data breach.

179.    Plaintiff and Class Members conferred a monetary benefit on Defendants in that Plaintiff were required to pay Defendants for services, a portion of which should have been specifically allocated towards adequate data security.

180.    Without the Private Information provided by Plaintiff and Class Members, Defendants could not derive revenue from their regular business activities. A portion of the revenue derived from the services provided to Plaintiff and Class Members was to be used to provide a reasonable level of data security and reasonable data security practices. The amount of revenue to be allocated to data security is known to Defendants.

181.    The implied promise included consideration beyond those pre-existing general duties owed under state and federal regulations. The additional consideration included implied

promises to take adequate steps to comply with specific industry data security standards and FTC guidelines and industry standards on data security.

182.    The implied promises include but are not limited to: (1) taking steps to ensure that any agents who are granted access to Private Information also protect the confidentiality of that data; (2) taking steps to ensure that the Private Information that is placed in the control of its agents is restricted and limited to achieve an authorized purpose; (3) restricting access to qualified and trained agents; (4) designing and implementing appropriate retention policies to protect the Private Information against data breaches; (5) applying or requiring proper encryption; (6) multifactor authentication for access; and (7) other steps to protect against foreseeable data breaches.

183.    Based on this implicit understanding, Plaintiff and Class Members accepted Defendants' offers and provided Defendants with their Private Information to obtain services.

184.    Plaintiff and Class Members would not have permitted their Private Information to be collected and stored by Correction Officers had they known that Correction Officers would not ensure that DHCA safeguard their Private Information, as promised, or provide timely notice of a data breach.

185.    Plaintiff and Class Members fully performed their obligations under their implied contracts with Defendants.

186.    Defendants breached the implied contracts by failing to safeguard Plaintiff's and Class Members' Private Information and by failing to provide them with timely and accurate notice of the Data Breach.

187.    Upon information and belief, Defendants have not provided Plaintiff and the Class with information regarding the root cause of the Data Breach and the steps DHCA is taking to ensure that the Private Information remains safe and protected from further disclosures.

188.    The losses and damages Plaintiff and Class Members sustained (as described above) were the direct and proximate result of Defendants' breach of its implied contracts with Plaintiff and Class Members.

## FOURTH CAUSE OF ACTION
## UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Class)

189.    Plaintiff re-alleges and incorporates by reference all preceding factual paragraphs as though fully set forth herein.

190.    Plaintiff alleges this claim in the alternative to her breach of implied contract claim.

191.    Plaintiff and Class Members conferred a benefit on Defendants by way of providing their Private Information to Defendants as part of Defendants' business.

192.    Defendants required Plaintiff's and Class Members' Private Information to conduct their business and generate revenue, which they could not do without collecting and maintaining Plaintiff's and Class Members' Private Information.

193.    By conferring their Private Information to Defendants, directly or indirectly, Plaintiff and Class Members reasonably understood Defendants would be responsible for securing their Private Information from unauthorized access and disclosure and ensure it complied with FTC cybersecurity regulations and guidelines.

194.    Plaintiff and Class Members paid a certain sum of money to Correction Officers, which was used to hire DHCA and fund adequate data security.

195.    As such, a portion of the payments made by or on behalf of Plaintiff and the Class was to be used to provide a reasonable level of data security, and the amount of the portion of each payment made that is allocated to data security is known to Defendants.

196.    There is a direct nexus between money paid to Defendants and the requirement for

43

Defendants to keep Plaintiff's and Class Members' Private Information confidential and protected from unauthorized access and disclosure.

197.    Protecting the Private Information of Plaintiff and Class Members is integral to Defendants' business. Without their Private Information, Defendants would be unable to provide services comprising Defendants' core business.

198.    Plaintiff's and Class Members' Private Information have monetary value.

199.    Defendants solicited, collected, stored, and maintained Plaintiff's and Class Members' Private Information, and as such, Defendants had direct knowledge of the monetary benefits conferred upon them by Plaintiff and the Class. Defendants profited from these transactions and used Plaintiff's and Class Members' Private Information for business purposes.

200.    Defendants appreciated that a monetary benefit was being conferred upon them by Plaintiff and Class Members and accepted that monetary benefit.

201.    Correction Officers enriched itself by saving the costs it reasonably should have expended on ensuring that DHCA use adequate data security measures to secure Plaintiff's and Class Members' Private Information. DHCA did not implement adequate security measures to protect Plaintiff's and Class Members' Private Information. Correction Officers instead calculated to increase its own profit at the expense of Plaintiff and Class Members by utilizing a vendor that used cheaper, ineffective security measures that did not have adequate security safeguards and allowed the Data Breach to occur.

202.    Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendants' decision to prioritize their own profits over the requisite security and the safety of Plaintiff's and Class Members' Private Information.

203.    Under the facts and circumstances outlined above, however, it is inequitable for

44

Defendants to retain that benefit without payment of the value thereof.

204.    Under the principles of equity and good conscience, Defendants should not be permitted to retain the monetary benefit belonging to Plaintiff and Class Members, because Defendants failed to ensure that DHCA implemented appropriate data management and security measures sufficient to protect against unauthorized access.

205.    Defendants acquired Plaintiff's and Class Members' Private Information through inequitable means in that it failed to disclose its inadequate data security practices, as previously alleged.

206.    If Plaintiff and Class Members knew that Defendants would not secure their Private Information, they would not have allowed Correction Officers to collect their Private Information and provide it to DHCA.

207.    Plaintiff and Class Members have no adequate remedy at law.

208.    As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm (as alleged above).

209.    Defendants should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, all gains that it unjustly received.

### FIFTH CAUSE OF ACTION
### BREACH OF THIRD-PARTY BENEFICIARY CONTRACT
### (On Behalf of Plaintiff and the Class)

210.    Plaintiff re-alleges and incorporates all preceding factual paragraphs as though fully set forth herein.

211.    DHCA entered into contracts, written or implied, with Correction Officers and other businesses and organizations ("Clients"), to perform services. Upon information and belief,

these contracts are virtually identical between and among DHCA and its Clients around the country

whose members, including Plaintiff and Class Members, were affected by the Data Breach.

212.    In exchange, DCHA agreed, in part, to implement adequate security measures to

safeguard the Private Information of Plaintiff and the Class.

213.    These contracts were made expressly for the benefit of Plaintiff and the Class, as

Plaintiff and Class Members were the intended third-party members of the contracts entered into

between DHCA and its Clients. DCHA knew that if it were to breach these contracts with its

Clients, its Clients' members—Plaintiff and Class Members—would be harmed.

214.    DHCA breached the contracts it entered into with its Clients by, among other

things, failing to (i) use reasonable data security measures, (ii) implement adequate protocols and

employee training sufficient to protect Plaintiff Private Information from unauthorized disclosure

to third parties, and (iii) promptly and adequately detecting the Data Breach and notifying Plaintiff

and Class Members thereof.

215.    Plaintiff and the Class were harmed by DHCA's breach of its contracts with its

Clients, as such breach is alleged herein, and are entitled to the losses and damages they have

sustained as a direct and proximate result thereof.

216.    Plaintiff and Class Members are also entitled to their costs and attorney's fees

incurred in this action.

**SIXTH CAUSE OF ACTION**
**NELIGENT TRAINIG, HIRING, AND SUPERVISION**
**<u>(On Behalf of Plaintiff and the Class)</u>**

217.    Plaintiff re-alleges and incorporates all preceding factual paragraphs as though fully

set forth herein.

218.    At all relevant times, DHCA was Correction Officers agent. Correction Officers granted DHCA access to the Private Information of Plaintiff and the Class without properly vetting DHCA, inquiring about/ investigating DHCA's data security, training DCHA, advising DHCA of its duties owed to Plaintiff and the Class under the FTC, and/or advising DHCA of the confidential nature of Plaintiff's and the Class's Private Information.

219.    Correction Officers was negligent and failed to exercise the requisite standard of care in the hiring, supervision, and retention of DHCA – who disclosed Plaintiffs' and the Class's Private Information without authorization and caused the damages delineated herein by virtue of the Data Breach.

220.    At all times relevant hereto, Correction Officers owed a duty to Plaintiffs and the Class to train and supervise its agents and third parties handling sensitive Private Information in its possession to ensure they recognized the duties owed to Plaintiff and the Class to keep their Private Information safe from data breaches.

221.    Correction Officers owed a duty to Plaintiff and the Class to ensure DHCA had adequate data security, procedures, and protocols sufficient to protect Plaintiff's and the Class's Private Information from data breaches prior to hiring DHCA.

222.    Correction Officers also owed a continuing duty to Plaintiff and the Class to ensure DHCA continued to employ adequate data security, procedures, and protocols sufficient to protect Plaintiff's and the Class's Private Information from data breaches after hiring DHCA.

223.    Correction Officers breached this duty by failing to ensure DHCA possessed the requisite data security, procedures, practices, infrastructure, and protocols to protect Plaintiff's and the Class's Private Information from data breaches prior to hiring DHCA and while DHCA worked for Correction Officers.

224.    Correction Officers was on notice of the importance of data security because of well publicized data breaches occurring throughout the United States and because of the FTC publications on data breaches. Despite knowledge of prior data breaches, Correction Officers failed to ensure DHCA possessed the adequate security posture to protect Plaintiff's and the Class's Private Information from unauthorized disclosure.

225.    Correction Officers knew or should have known that the failure to ensure DHCA's employed adequate data security, procedures, and protocols would create an unreasonable risk of danger to persons and property.

226.    As a direct and proximate result of Correction Officers breach of its duties, and its negligent hiring, training, selection, and supervision, of DHCA, which resulted in the disclosure of Plaintiff's and Class members' confidential Private Information in the Data Breach, Plaintiff and the members of the Class suffered damages, including, without limitation, loss of the benefit of the bargain, exposure to heightened future risk of identity theft, loss of privacy, diminution in value of their Private Information, and actual misuse of their Private Information.

227.    Correction Officers was advised of the Data Breach through online publication, but continued to employ DHCA, putting Plaintiff and the Class at risk of more data breaches in the future.

228.    The acts and omissions of Correction Officers in negligently hiring, retaining, training, and/or supervising DHCA are such as to show gross negligence and reckless disregard for the safety of others and, therefore, punitive damages are appropriate.

## SEVENTH CAUSE OF ACTION
## DECLARATORY AND INJUNCTIVE RELIEF
## <u>(On Behalf of Plaintiff and the Class)</u>

229.    Plaintiff re-alleges and incorporates all preceding factual paragraphs as though fully set forth herein.

230.    As previously alleged, Plaintiff and Class Members entered into implied contracts with Defendants, which required Defendants to provide adequate security for the protection of the Private Information Defendants collected from Plaintiff and the Class, directly or indirectly.

231.    Defendants owed and still owe a duty of care to Plaintiff and Class Members that requires it to adequately secure Plaintiff's and Class Members' Private Information.

232.    Upon information and belief, Defendants still possesses Plaintiff's and Class Members' Private Information.

233.    Defendants have not satisfied their contractual obligations and legal duties to Plaintiff and Class Members.

234.    Since the Data Breach, DHCA has not announced any changes to its data security infrastructure, processes or procedures to fix the vulnerabilities in its computer systems and/or security practices which permitted the Data Breach to occur and go undetected and, thereby, prevent further attacks.

235.    Defendants have not satisfied its contractual obligations and legal duties to Plaintiff and the Class. In fact, now that DHCA's insufficient data security is known to hackers, the Private Information in DHCA's possession is even more vulnerable to cyberattacks.

236.    Further, Plaintiff and Class Members are at risk of additional or further harm due to the exposure of their Private Information and Defendants' failure to address the security failings that led to such exposure.

237.    There is no reason to believe that DHCA's security measures are any more adequate now than they were before the Data Breach.

238.    Plaintiff and the Class, therefore, seek a declaration (1) that DCH's existing security measures do not comply with its contractual obligations and duties of care to provide adequate security, and (2) that to comply with its contractual obligations and duties of care, DHCA must implement and maintain reasonable security measures, including, but not limited to:

a.    Ordering that DHCA engage third-party security auditors and penetration testers, as well as internal security personnel, to conduct testing, including simulated attacks, penetration tests, and audits on DHCA's systems on a periodic basis, and ordering DHCA to promptly correct any problems or issues detected by such third-party security auditors;

b.    Ordering that DHCA engage third-party security auditors and internal personnel to run automated security monitoring;

c.    Ordering that DHCA audit, test, and train its security personnel regarding any new or modified procedures;

d.    Ordering that DHCA segment employee and patient data by, among other things, creating firewalls and access controls so that if one area of DHCA's systems is compromised, hackers cannot gain access to other portions of DHCA's systems;

e.    Ordering that DHCA purge, delete, and destroy, in a reasonably secure manner, customer data not necessary for their provisions of services;

f.    Ordering that DHCA conduct regular database scanning and security checks; and

50

g.     Ordering that Defendants routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class pray for judgment against Defendants as follows:

a.    For an order determining that this action is properly brought as a class action and certifying Plaintiff as the representative of the Class and her counsel as Class Counsel;

b.    A judgment in favor of Plaintiff and the Class awarding them appropriate monetary relief, including compensatory damages, punitive damages, attorney fees, expenses, costs, and such other and further relief as is just and proper;

c.    An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

d.    An order requiring Defendants to pay the costs involved in notifying the Class Members about the judgment and administering the claims process;

e.    A judgment in favor of Plaintiff and the Class awarding them pre-judgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

f.    An award of such other and further relief as this Court may deem just and proper.

## VIII.   DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all appropriate issues raised in this Class Action Complaint.

Dated:  January 28, 2026                    Respectfully submitted,

                                            */s/ William B. Federman*
                                            William B. Federman
                                            (S.D. New York #WF9124)
                                            **FEDERMAN & SHERWOOD**
                                            10205 N. Pennsylvania Ave.
                                            Oklahoma City, OK 73120
                                            T: (405) 235-1560
                                            E: wbf@federmanlaw.com

                                            *Attorney for the Plaintiff and Proposed Class*